# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 13, 2007

130435

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

AZIZUL ISLAM,
        Defendant-Appellant.

_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 130435
COA: 257288
Wayne CC: 00-002335

On order of the Court, the application for leave to appeal the December 6, 2006 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MARKMAN, J., concurs and states as follows:

I concur in the Court's order denying leave to appeal in this case. Although the planting of a bloody hacksaw in defendant's basement by the dog handler constituted an effort to taint evidence, defendant failed to demonstrate that it is more probable than not that this, in fact, affected the outcome of his trial.

The impact of the planted evidence was limited because the jury never heard about any *bloody* hacksaw blade. Rather, the jury merely heard about a broken hacksaw blade found in an area where the detection dog alerted, as well as testimony about several other saws. The trial court, however, stated three times that there were no saws with the victim's blood or remains on them and that each of the saws discovered was irrelevant as evidence. The expert witness also limited the type of saw used in committing the murder to a dovetail carpenter's saw, rather than a hacksaw. Finally, the prosecutor never mentioned the planted hacksaw blade to the jury.

In addition, there was abundant, untainted other evidence of defendant's guilt. The victim's blood was found underneath a coat of fresh paint on defendant's basement floor, on the paint roller, mop, vacuum cleaner, carpet, boots, and sink pump. The defense stipulated that it was the victim's blood, and the stipulation was consistent with

an expert's testimony. Paint chips consistent with both the new paint and old paint on defendant's basement floor were found in the victim's remains. The fact that defendant dismembered the victim and freshly painted the basement floor are further indicators of a cover-up.

The timing of the murder was also such that it fit well with defendant's clear motive to kill the victim, his wife. The victim, who was involved with another man, had returned to Michigan to finalize her divorce. Shortly before her disappearance, the victim told independent witnesses that she feared defendant would kill her, and she would try to get an earlier flight to London. The victim's boyfriend testified that defendant and the victim had an argument when defendant caught her talking to him on the phone, and their conversation ended abruptly. The victim went missing very shortly after going to sleep in defendant's home, leaving her watch and toothbrush behind.

Defendant also was circumstantially tied to the disposal of the victim's body. He requested a neighbor's assistance to load a very heavy garbage can into a van he rented, which had a plastic sheet covering the backseat and the floor. On the day he rented the van, a man who looked like defendant and drove a van similar to the rented van was seen standing in a field in the Toledo area, near the property where the victim's torso was later found.

Defendant also tied himself to the crime with the statements he gave to the police, which expressed remorse and admitted some level of participation in the death. Defendant made inconsistent statements about his reasons for renting the van used to transport the victim's remains. He told the neighbor who helped him load the trash can into the van that he was taking it to a Christmas party, he told the van rental company he was picking up relatives from the airport, and he told the police that he was checking the van to see if luggage would fit for an upcoming trip to Washington, D.C. Defendant ultimately made his family trip in his Mazda sedan. However, the van was driven 213 miles, inconsistent with all of these explanations but consistent with a trip to Toledo to dispose of the victim's torso.

Thus, even absent the tainted evidence, the remaining evidence here supports the verdict. Because the admission of the planted evidence did not eventually lead to a miscarriage of justice, and because defendant was not actually prejudiced by such evidence, the error, in my judgment, was harmless.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 13, 2007

_Corbin R. Davis_
Clerk

d0410